**LAQUER URBAN CLIFFORD & HODGE LLP**
Michael Y. Jung, State Bar No. 245260
Email: Jung@luch.com
225 South Lake Avenue, Suite 200
Pasadena, California 91101-3030
Telephone: (626) 449-1882 / Facsimile: (626) 449-1958

Counsel for Plaintiffs, Trustees of the Southern California Pipe Trades Health and Welfare Trust Fund, et al.

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| TRUSTEES OF THE SOUTHERN CALIFORNIA PIPE TRADES HEALTH AND WELFARE TRUST FUND; TRUSTEES OF THE SOUTHERN CALIFORNIA PIPE TRADES PENSIONERS AND SURVIVING SPOUSES HEALTH FUND; TRUSTEES OF THE SOUTHERN CALIFORNIA PIPE TRADES RETIREMENT TRUST FUND; TRUSTEES OF THE SOUTHERN CALIFORNIA PIPE TRADES DEFINED CONTRIBUTION TRUST FUND; TRUSTEES OF THE SOUTHERN CALIFORNIA PIPE TRADES VACATION AND HOLIDAY TRUST FUND; TRUSTEES OF THE SOUTHERN CALIFORNIA PIPE TRADES CHRISTMAS BONUS FUND; TRUSTEES OF THE APPRENTICE AND JOURNEYMAN TRAINING TRUST FUND; TRUSTEES OF THE PLUMBERS AND PIPEFITTERS NATIONAL PENSION FUND; and TRUSTEES OF THE INTERNATIONAL TRAINING FUND,<br><br>Plaintiffs,<br><br>v.<br><br>ALLOY WELDING, INC., a California corporation; and ROBERT GUTIERREZ, an individual doing business as "Alloy Welding,"<br><br>Defendants. | CASE NO.: 5:18-cv-00221<br><br>**COMPLAINT FOR:**<br><br>**1. BREACH OF WRITTEN COLLECTIVE BARGAINING AGREEMENTS AND RELATED TRUST AGREEMENTS AND VIOLATION OF § 515 OF ERISA [29 U.S.C. § 1145]; and**<br><br>**2. BREACH OF CONTRACT** |

Plaintiffs, Trustees of the Southern California Pipe Trades Health and Welfare Trust Fund, Trustees of the Southern California Pipe Trades Pensioners and Surviving Spouses Health Fund, Trustees of the Southern California Pipe Trades Retirement Trust Fund, Trustees of the Southern California Pipe Trades Defined Contribution Trust Fund, Trustees of the Southern California Pipe Trades Vacation and Holiday Trust Fund, Trustees of the Southern California Pipe Trades Christmas Bonus Fund, Trustees of the Apprenticeship and Journeyman Training Trust Fund, Trustees of the Plumbers and Pipefitters National Pension Fund, and Trustees of the International Training Fund (collectively the "Trustees"), complain and allege:

**JURISDICTION AND VENUE**

1. This Court has jurisdiction of this case pursuant to Section 502(e)(1) of the Employee Retirement Income Security Act of 1974, as amended ("ERISA") [29 U.S.C. § 1132(e)(1)], which grants the United States District Courts jurisdiction over civil actions brought by a fiduciary pursuant to Section 502(a)(3) of ERISA [29 U.S.C. § 1132(a)(3)] to redress violations or enforce the terms of ERISA or an employee benefit plan governed by ERISA. Such jurisdiction exists without respect to the amount in controversy or the citizenship of the parties, as provided in Section 502(f) of ERISA [29 U.S.C. § 1132(f)].

2. This Court also has jurisdiction of this case pursuant to Section 301(a) of the Labor Management Relations Act of 1947, as amended ("LMRA") [29 U.S.C. § 185(a)], which grants the United States original jurisdiction over suits for violation of contracts between an employer and a labor organization in an industry affecting commerce, without respect to the amount in controversy and the citizenship of the parties.

3. Venue is proper in this Court pursuant to Section 502(e)(2) of ERISA [29 U.S.C. § 1132(e)(2)], and Section 301(a) of the LMRA [29 U.S.C. § 185(a)], in that this is the district in which the plaintiff Trustees' trust funds are administered, in which the relevant acts took place, and in which monies are due and payable.

4. To the extent this complaint sets forth any state law claims, this Court has supplemental jurisdiction over those claims pursuant to 28 U.S.C. § 1367(a).

## PARTIES

5. Plaintiffs are the Trustees of the Southern California Pipe Trades Health and Welfare Trust Fund, the Southern California Pipe Trades Pensioners and Surviving Spouses Health Fund, the Southern California Pipe Trades Retirement Trust Fund, the Southern California Pipe Trades Defined Contribution Trust Fund, the Southern California Pipe Trades Vacation and Holiday Trust Fund, the Southern California Pipe Trades Christmas Bonus Fund, and the Apprentice and Journeyman Training Trust Fund (collectively the "Local Trusts"), and the Plumbers and Pipefitters National Pension Fund (the "National Trust") and the International Training Fund (the "International Trust"). The Local Trusts, National Trust and International Trust are referred to collectively as the "Trusts". The Trusts are express trusts created pursuant to written agreements and declarations of trust ("Trust Agreements") between the Southern California Pipe Trades District Council No. 16 of the United Association of Journeymen and Apprentices of the Plumbing and Pipefitting Industry ("District Council No. 16") and various employer associations in the plumbing and pipefitting industry in Southern California, or between District Council No. 16, and other councils of the United Association of Plumbers and Pipefitters, and various employer associations across the United States. The Trusts are now, and were at all times material to this action, labor-management multiemployer trusts created and maintained pursuant to Section 302(c)(5) of the LMRA [29 U.S.C. § 186(c)(5)].

6. The Trustees are "*fiduciar[ies]*" with respect to the Trusts as defined in Section 3(21)(A) of ERIS*A* [29 U.S.C. § 1002(21)(A)].

7. At all times material herein, defendant Alloy Welding, Inc. ("AW Inc.") has been a corporation duly organized under the laws of the state of California, with its principal place of business located in Fontana, California.

///

8. Trustees are informed and believe, and thereon allege, that according to the online database maintained by California Secretary of State, AW Inc.'s corporate status is currently suspended by the California Franchise Tax Board for failure to meet tax requirements.

9. At all times material herein, defendant Robert Gutierrez ("Mr. Gutierrez") has been an individual doing business as "Alloy Welding," with his principal place of business located in Fontana, California. AW Inc. and Mr. Gutierrez are referred to jointly herein as "Defendants."

10. Trustees are informed and believe, and thereon allege, that Mr. Gutierrez is the sole owner and principal of AW Inc.

11. Trustees are informed and believe, and thereon allege, that at all times material herein, AW Inc. has conducted business in California as a welding contractor.

12. Trustees are informed and believe, and thereon allege, that at no time material herein has AW Inc. maintained a valid license with the California Contractors State License Board to conduct business as a welding contractor.

13. Trustees are informed and believe, and thereon allege, that at all times material herein Mr. Gutierrez has and currently holds a "C60 – Welding" license with the California Contractors State License Board, license number 871635.

14. Trustees are informed and believe, and thereon allege, that at all times material herein, AW Inc. has conducted business in California as a welding contractor under the individual contractor's license of Mr. Gutierrez.

**<u>EXECUTION OF BARGAINING AGREEMENT</u>**

**<u>AND STATUS OF PARTIES</u>**

15. On or about June 1, 2015, AW Inc. executed and delivered a written agreement ("Agreement") to District Council No. 16, whereby AW Inc. agreed to be bound by the terms and conditions, with certain exceptions, of the written and existing Master Agreement for the Plumbing and Piping Industry of Southern California, in effect between the District Council No. 16 and the Southern California

Contractors ("Master Agreement"), and to the related Trust Agreements. The terms and provisions of each of the Trust Agreements are incorporated by reference into the Master Agreement.

16. The Agreement lists Mr. Gutierrez's individual contractor's license number 871635, as the contractor's license for AW Inc.

17. The Trustees are informed and believe, and therefore allege, that at all times material herein, AW Inc. conducted business solely under Mr. Gutierrez's individual contractor's license, including but not limited to performing work covered by the Master Agreement and submitting to the Trustees monthly contribution reports and payment of fringe benefit contributions owed pursuant to the Master Agreement, and related Trust Agreements.

18. Pursuant to the conduct of AW Inc. and Mr. Gutierrez under the Master Agreement, Mr. Gutierrez is also bound to the Master Agreement and related Trust Agreements. Trustees are informed and believe, and thereon allege, that since on or before June 1, 2015, AW Inc. and Mr. Gutierrez have been bound to the Master Agreement and to each of the Trust Agreements.

19. Trustees are informed and believe, and thereon allege, that to avoid paying contributions, benefits and/or withholdings and in violation of the Master Agreement, related Trust Agreements and § 515 of ERISA, [29 U.S.C. § 1145], Defendants, and one or more other individuals or entities, diverted or redirected employees and/or business affairs, assets or operations between one or more individuals and/or entities. Trustees are informed and believe, and thereon allege, that the other individuals and/or entities are presently unknown to Trustees. If Trustees ascertain that other entities have engaged in such activities with Defendants, Trustees will seek leave to amend this complaint to include such other individuals and entities as defendants.

20. That Defendants are each an "*employer*" as that term is used in the Master Agreement and related Trust Agreements.

21. Defendants are each an "*employer*" as defined and used in § 3(5) of ERISA [29 U.S.C. § 1002(5)], and, therefore, Defendants are "*obligated to make contributions to a multiemployer plan*" within the meaning of § 515 of ERISA [29 U.S.C. § 1145]. Trustees are informed and believe, and thereon allege, that Defendants are also an "*employer*" engaged in "*commerce*" in an "*industry affecting commerce,*" as those terms are defined and used in §§ 501(1) and 501(3) of the LMRA [29 U.S.C. §§ 142(1) and 142(3)], and within the meaning and use of § 301(a) of the LMRA [29 U.S.C. § 185(a)].

**FIRST CAUSE OF ACTION**

**BREACH OF WRITTEN COLLECTIVE BARGAINING AGREEMENT AND RELATED TRUST AGREEMENTS AND VIOLATION OF § 515 OF ERISA [29 U.S.C. § 1145]**

**(AGAINST DEFENDANTS)**

22. Trustees hereby incorporate herein by this reference paragraphs 1 through 21 above, inclusive of any and all subparagraphs, to the same effect as if set forth verbatim.

23. By the terms and provisions to the Master Agreement and related Trust Agreements, and at all times material herein, Defendants agreed, and were obligated, to do the following:

23.1 Prepare and submit true, complete and accurate written monthly contribution reports to the Trustees on a timely basis showing: i) the identities of employees performing work covered by the Master Agreement, ii) the number of hours worked by these employees, iii) their rates of pay, iv) the character of hours worked (e.g., straight time, over-time, etc.), and v) based upon the hours worked or amounts paid to employees, the proper calculation of the fringe benefit contributions, benefits and/or withholdings attributable to the same employees. Such monthly contribution reports are due on the 10th day of each successive month;

23.2 Pay to the Trustees fringe benefit contributions, benefits and/or withholdings on a monthly basis, and at specified rates for each hour worked by covered employees. These amounts are considered delinquent if not received by the Trustees by the 15th of the month succeeding the month in which the work was performed. These amounts are due and payable at the Trustees' administrative offices in Los Angeles, California; and

23.3 Permit the Trustees and their agents to conduct audits of payroll and related records in order to determine if fringe benefit contributions have been properly paid pursuant to the Master Agreement and related Trust Agreements.

24. Section 515 of ERISA [29 U.S.C. § 1145], provides *"[e]very employer who is obligated to make contributions to a multiemployer plan under the terms of the plan or under the terms of a collectively bargained agreement shall, to the extent not inconsistent with law, make such contributions in accordance with the terms and conditions of such plan or such agreement."*

25. Defendants are each an "*employer*" as defined and used in § 3(5) of ERISA, [29 U.S.C. § 1002(5)], and are "*obligated to make contributions to a multiemployer plan*" within the meaning and use of § 515 of ERISA [29 U.S.C. § 1145].

26. Sections 429 of ERISA, 29 U.S.C. §§ 1059, provides that "every employer shall … maintain records with respect to each of his employees sufficient to determine the benefits due or which may become due to such employees." Pursuant to section 429 of ERISA, 29 U.S.C. §§ 1059, Defendants were obligated to maintain records sufficient to allow the Trustees to determine the contributions owed by Defendants to the Trusts, and the benefits due to the employees of Defendants.

27. On or about October 24, 2017, the Trustees' agent completed an audit of Defendants' records. The audit revealed that Defendants breached the Master Agreement and related Trust Agreements and their statutorily-mandated obligations under section 515 of ERISA [29 U.S.C. § 1145] by failing to report and pay fringe

benefit contributions to the Trustees in the sum of $16,180.34 for work performed by its employees during the time period of June 1, 2015, through December 31, 2016.

28. Based on the information provided by Defendants in their monthly contribution report for March 2017, Defendants also failed to pay the Trustees $33.00 for fringe benefit contributions in breach of the Master Agreement and Trust Agreements, and in violation of their statutorily-mandated obligation under section 515 of ERISA [29 U.S.C. § 1145].

29. Defendants failed to timely pay fringe benefit contributions related to work performed during the months of February 2017 and April 2017 in breach of the Master Agreement and Trust Agreements, and in violation of their statutorily-mandated obligation under section 515 of ERISA [29 U.S.C. § 1145].

30. Trustees are informed and believe, and thereon allege, that Defendants owe, but have failed to pay, certain additional amounts of fringe benefit contributions, and other damages for breach of the Master Agreement and related Trust Agreements in violation of section 515 of ERISA [29 U.S.C. § 1145], in amounts not presently known to the Trustees, but these additional amounts will be established by proof.

31. Defendants are "*delinquent,*" as that term is used in the Master Agreement, and/or related Trust Agreements.

32. Pursuant to § 502(g)(2) of ERISA [29 U.S.C. § 1132(g)(2)], in any action by a fiduciary in which judgment is found in favor of the plan, this Court shall award the plan: i) the unpaid contributions, ii) interest on the unpaid contributions, iii) an amount equal to the greater of a) interest on the unpaid contributions or b) liquidated damages provided for under the plan in an amount not in excess of 20% (or such higher percentage as may be permitted under federal or state law) of the amount determined by the Court to be unpaid contributions, iv) reasonable attorneys' fees and costs and v) such other legal or equitable relief as this Court deems appropriate. For purposes of § 502(g)(2) of ERISA [29 U.S.C. § 1132(g)(2)], interest on unpaid contributions shall be determined by using the rate provided under the plan.

33. Pursuant to the Master Agreement and § 502(g)(2)(C) of ERISA [29 U.S.C. § 1132(g)(2)(C)], Defendants are obligated to pay to the Trustees liquidated damages for the detriment caused by the failure of Defendants to pay fringe benefit contributions in a timely manner and late fees for each contribution report submitted after the date it was due. Pursuant to the written Joint Collection Policy and Procedures ("Joint Collection Policy") promulgated by the Trustees pursuant to the authority granted to them by the Master Agreement, those liquidated damages are to be assessed at ten percent (10%) of the unpaid or untimely contributions. However, if a lawsuit is filed to collect the contributions, pursuant to the Joint Collection Policy those liquidated damages are to be assessed at twenty percent (20%) of the unpaid or late contributions, and of the contributions that should have been paid if all covered work were performed by an entity signatory to the Master Agreement. Defendants owe the Trustees at least $3,242.67 for liquidated damages on unpaid contributions based on the audit and monthly reports for March 2017, plus additional amounts that will be established by proof. Defendants owe the Trustees at least $61.94 for liquidated damages assessed on untimely paid contributions for the April 2017 work month, plus additional amounts that will be established by proof.

34. Pursuant to the Joint Collection Policy, if contribution reports are not timely submitted to the Trustees, late fees are assessed at $200.00 per occurrence. Defendants currently owe the Trustees at least $200.00 for late fees, plus additional amounts that will be established by proof.

35. Pursuant to the Master Agreement, the Joint Collection Policy and § 502(g)(2)(B) of ERISA [29 U.S.C. § 1132(g)(2)(B)], Defendants owe the Trustees interest at eighteen percent (18%) per annum on all unpaid or late paid fringe benefit contributions from the dates the sums were originally due or should have been paid to the Trustees until paid. Defendants owe the Trustees accrued interest on unpaid contributions in amounts that will be established by proof. Defendants owe the

Trustees at least $32.15 for accrued interest on untimely paid contributions for the February 2017 and April 2017 work months.

36. By the Master Agreement, the Joint Collection Policy and § 502(g)(2)(D) of ERISA [29 U.S.C. § 1132(g)(2)(D)], Defendants agreed that in the event of any delinquency, Defendants would pay all legal fees and costs in connection therewith, whether incurred before or after litigation is commenced.

37. It has been necessary for Trustees to engage the law firm of Laquer, Urban, Clifford & Hodge, LLC for the purpose of collecting said contributions and damages, and the Trustees are entitled to their reasonable attorneys' fees in connection therewith. The exact amount of the legal fees due and payable has not been ascertained at this time. These amounts shall be established by proof.

38. Pursuant to the Master Agreement and the Joint Collection Policy, Defendants are liable to the Trustees for all costs incurred in the Trustees' audit of AW, Inc.'s payroll and related records in the amount of $4,640.00, plus additional amounts as established by proof.

39. By the Master Agreement and Trust Agreements, Defendants agreed in the event Defendants failed to pay fringe benefit contributions or otherwise comply with the terms and provisions of the Master Agreement and related Trust Agreements, to post and deliver either a good faith deposit, or a performance bond issued in favor of the Trustees, in an amount based upon a calculation set forth in the Master Agreement. Trustees are informed and believe, and thereon allege, that the Trustees are entitled to such good faith deposit and delivery of monies or bond from Defendants. The amount of the good faith deposit or bond will be established by proof at trial.

40. Pursuant to § 502(g)(2)(E) of ERISA [29 U.S.C. § 1132(g)(2)(E)], this Court may grant such other legal or equitable relief as this Court deems appropriate. As part of Trustees' judgment, Trustees shall also request this Court to:

40.1. Order Defendants and Defendants' representatives, agents and associates, to provide a full and complete accounting for, and tracing the use of, all

unpaid contributions and identify all property, real or personal, tangible or intangible, that are the result, whether in whole or in part, of the use of any unpaid contributions;

40.2. Order Defendants and Defendants' representatives, agents and associates, to post and deliver either a good faith deposit, or a performance bond issued in favor of the Trustees, in an amount determined by this Court to be appropriate;

40.3. Order the creation of a constructive trust on all applicable property, and order the transfer of the applicable property to the Trustees; and

40.4. Order Defendants and Defendants' representatives, agents and associates, to pay to the Trustees all amounts due the Trustees, including, but not limited to, the unpaid contributions, benefits, withholdings, damages, legal fees, audit fees and other expenses and damages incurred.

**SECOND CAUSE OF ACTION**

**BREACH OF CONTRACT**

**(AGAINST DEFENDANTS)**

41. Trustees hereby refer to, and incorporate herein, by this reference paragraphs 1 through 40 above, inclusive of any and all subparagraphs, to the same effect as if set forth verbatim.

42. Trustees are informed and believe, and thereon allege, that amounts due as union dues and association fees and related amounts (excluding employer and employee contributions) are not plan "assets" and, accordingly, are not recoverable under ERISA.

43. The Master Agreement requires Defendants to pay to Trustees, for the benefit of District Council 16, its affiliated local unions, the Piping Industry Progress Education & Trust Fund ("PIPE"), the Labor Management Compliance Council ("LMCC") and the California Plumbers and Mechanical Contractors Association ("CPMCA"), certain amounts for each hour worked by Defendants' employees performing work covered by the Master Agreement. Trustees are the assignee of District Council No. 16, its affiliated local unions, PIPE, LMCC and CPMCA for

collecting said hourly contributions. Defendants have failed to pay amounts due under the Master Agreement to Trustees for the benefit of District Council 16, its affiliated local unions, PIPE, LMCC, and CPMCA, totaling $2,196.88, plus additional amounts which shall be established by proof herein.

44. Pursuant to the Master Agreement and Joint Collection Policy, Defendants are obligated to pay to the Trustees liquidated damages on all unpaid or delinquent contributions (including those amounts due to District Council No. 16, its affiliated local unions, PIPE, LMCC and CPMCA). Pursuant to the written Joint Collection Policy, those liquidated damages are to be assessed at ten percent (10%) of the unpaid or untimely contributions. However, if a lawsuit is filed to collect the contributions, pursuant to the Joint Collection Policy those liquidated damages are to be assessed at twenty percent (20%) of the unpaid or late contributions. Defendants owe the Trustees at least $439.38 for liquidated damages on unpaid amounts due to District Council No. 16, its affiliated local unions, PIPE, LMCC and CPMCA, plus additional amounts that will be established by proof.

45. Pursuant to the Master Agreement and the Joint Collection Policy, Defendants owe the Trustees interest at eighteen percent (18%) per annum on all unpaid or delinquent contributions (including those amounts due to District Council No. 16, its affiliated local unions, PIPE, LMCC and CPMCA) from the dates the sums were originally due or should have been paid to the Trustees until paid. Defendants accrued interest on unpaid amounts due to District Council No. 16, its affiliated local unions, PIPE, LMCC and CPMCA, in amounts that will be established by proof.

## **PRAYER**

**WHEREFORE**, the Trustees pray for judgment as follows:

1. For unpaid fringe benefit contributions and other damages for breach of contract totaling at least $18,410.22, plus additional amounts as established by proof;

2. For liquidated damages of at least $3,743.99, plus additional amounts as established by proof;

3. For interest at the rate of eighteen percent (18%) per annum, or other applicable legal rate, on all contributions due from their respective due dates, or the dates said contributions should have been paid, in amounts as established by proof;

4. For late fees of at least $200.00, plus additional amounts as established by proof;

5. For special damages in amounts as proved;

6. For damages for breach of contract as proved;

7. For audit costs of at least $4,640.00, plus additional amounts as established by proof;

8. For the Trustees' reasonable attorneys' fees in amounts as proved;

9. For costs of suit incurred herein; and

10. For such additional relief as this Court deems just and proper, including, but not limited to, the following:

10.1 An Order directing Defendants, their representatives, agents and associates, to provide a full and complete accounting for, and tracing the use of, all unpaid contributions and identify all property, real or personal, tangible or intangible, that are the result, whether in whole or in part, of the use of any unpaid contributions;

10.2. An Order for the creation of a constructive trust on all applicable property, and an Order for the transfer of the applicable property to the Trustees; and

10.3. An Order directing Defendants, their representatives, agents and associates, to pay to the Trustees all amounts due the Trustees, including, but not limited to, the unpaid contributions, benefits, withholdings, damages, legal fees, and other expenses and damages incurred.

///

///

///

Dated: January 31, 2018 Respectfully Submitted,

LAQUER URBAN CLIFFORD & HODGE LLP

By: /S/ *Michael Y. Jung*
MICHAEL Y. JUNG
Counsel for Plaintiffs, Trustees of the Southern California Pipe Trades Health and Welfare Trust Fund, et al.

## WAIVER OF JURY TRIAL

Plaintiffs hereby waive a jury trial in this action.

Dated: January 31, 2018 LAQUER URBAN CLIFFORD & HODGE LLP

By: /S/ *Michael Y. Jung*
MICHAEL Y. JUNG
Counsel for Plaintiffs, Trustees of the Southern California Pipe Trades Health and Welfare Trust Fund, et al.